[No. B224207. Second Dist., Div. Eight. Sept. 28, 2011.]

JON M. LEFEBVRE, Plaintiff and Respondent, v.
ALICE LEFEBVRE et al., Defendants and Appellants.

## Counsel

Beltran, Beltran, Smith, Oppel & MacKenzie and Patrick S. Smith for Defendants and Appellants.

Kermisch & Paletz, William Kermisch and Natalie Locke for Plaintiff and Respondent.

## Opinion

**BIGELOW, P. J.**—Jon M. Lefebvre filed a complaint alleging malicious prosecution and similar causes of action against his former spouse, Alice

Lefebvre, and an alleged civil coconspirator, Nancy Toothman.[1] Alice and Toothman filed a special motion to strike Jon's complaint under the anti-SLAPP statute. (Code Civ. Proc., § 425.16.)[2] The trial court entered an order denying the anti-SLAPP motion, and Alice and Toothman then filed this appeal. We affirm the trial court's order.

## FACTS

Jon and Alice married in August 1995; they have two minor children. Over a period of years prior to August 2005, Alice began reading books on the subjects of divorce and money, including at least one book which included information about using false criminal accusations against a spouse in a divorce proceeding. During the same time period, Alice and Toothman conspired to bring false criminal accusations against Jon. On August 17, 2005, in furtherance of the conspiracy, Alice reported to a sheriff's deputy that Jon had recently threatened to kill her and their children, and Toothman confirmed Alice's criminal report to the deputy. ·

On August 26, 2005, authorities with the sheriff's department, acting in reliance upon the criminal reports from Alice and Toothman, filed a criminal case against Jon, charging him with a violation of Penal Code section 422, making a criminal threat. The charge was tried to a jury and Jon was found not guilty.

At the time of the verdict, the jurors, acting of their own volition, selected the jury foreperson to read the following statement into the record: "We, the jury, believe that the absence of any real investigation by law enforcement is shocking and we agree that this appears to follow a rule of guilty until proven innocent. There was no credible evidence supporting the indictment. We believe prosecuting this as a crime was not only a waste of time, money, and energy, for all involved, but is an affront to our justice system. This jury recommends restitution to the defendant for costs and fees of defending himself against these charges. This jury requests that our collective statement be made available in any [future] legal action relating to these parties. . . ." The judge who presided over Jon's criminal trial granted Jon's motion for a finding of factual innocence pursuant to Penal Code section 851.8, subdivision (e).

Jon thereafter filed a complaint in the local federal district court against Alice and Toothman. The district court dismissed Jon's federal action without

---

[1] Because the Lefebvre parties share a last name, we use their first names in this opinion in the interest of clarity.

[2] All further references to section 425.16 are to the Code of Civil Procedure.

prejudice to refiling his claims in state court. Jon then filed a complaint against Alice and Toothman alleging causes of action for malicious prosecution, false arrest and imprisonment, negligent statements without justification, intentional infliction of emotional distress, and for damages for violation of his civil rights pursuant to Civil Code section 52.1.

In summary, Jon's complaint alleges that Alice and Toothman conspired to bring a false criminal report against him, that their statements to police precipitated the underlying criminal action, that they repeated their false accusation at trial, and that the trial ended with his acquittal, and the subsequent finding of factual innocence.

Alice and Toothman filed a joint special motion to strike Jon's complaint under the anti-SLAPP statute. (§ 425.16.) The parties argued the anti-SLAPP motion to the trial court, and the court took the matter under submission. The court entered an order denying the anti-SLAPP motion. Broadly summarized, the court's six-page order sets forth the court's reasons for concluding that Alice and Toothman failed to meet their initial burden under the anti-SLAPP procedure because they did not show that the reports they filed with the police authorities constituted "protected activity" within the meaning of the anti-SLAPP statute. The trial court found that the record "conclusively" established that Alice's and Toothman's statements to the police were "illegal activity" under Penal Code section 148.5, and, as such, not "protected activity" within the meaning of the anti-SLAPP statute. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322–325 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*).) Having determined that Alice and Toothman failed to meet their initial burden under the anti-SLAPP statute of showing a "protected activity," the court found it unnecessary to address their contention that they will win their case in the end based on the "litigation privilege" established in Civil Code section 47, subdivision (b).

Alice and Toothman filed a timely notice of appeal.

## DISCUSSION

Alice and Toothman (hereafter collectively Alice) contend the order denying the anti-SLAPP motion must be reversed. First, because all of Jon's claims arise from Alice's criminal report to the police and, second, because her report was a "privileged communication" under Civil Code section 47, making it also a "protected activity" under the anti-SLAPP statute. Alice further argues that a privileged communication under Civil Code section 47 cannot give rise to liability, thus defeating any possibility that Jon has a "probability of prevailing" in his current case. Alice's argument does not persuade us that the trial court's order must be reversed.

*The Anti-SLAPP Statute*

■ We recently reviewed the anti-SLAPP statute in *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435 [122 Cal.Rptr.3d 73] (*Gerbosi*): "The Legislature enacted the anti-SLAPP statute to address the societal ills caused by meritless lawsuits that are filed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).) The statute accomplishes this end by providing a special procedure for striking meritless, chilling causes of action at the earliest possible stages of litigation. The statute requires two steps for striking a cause of action. In the first step, the court is tasked with determining whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from protected activity.' In this step, the moving defendant must demonstrate that the acts upon which the plaintiff's claim is based were taken in furtherance of the defendant's right of petition or free speech under the federal or state Constitution. If the court finds this threshold showing has been made by the defendant, the court must then determine whether the plaintiff has demonstrated a 'probability of prevailing' on his or her claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).)" (*Gerbosi, supra*, 193 Cal.App.4th at p. 443.)

"A cause of action 'arising from protected activity' means that the defendant's acts underpinning the plaintiff's cause of action involved an exercise of the right of petition or free speech. [Citation.] . . . The defendant must establish that the plaintiff's cause of action is actually *based on* conduct in exercise of those rights. [Citation.]" (*Gerbosi, supra*, 193 Cal.App.4th at p. 443.)

■ The second step of the anti-SLAPP procedure—a "probability of prevailing" on the merits—means a plaintiff must show that he or she has "a reasonable probability of prevailing, not prevailing by a preponderance of the evidence. For this reason, a court must apply a 'summary-judgment-like' test (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714 [54 Cal.Rptr.3d 775, 151 P.3d 1185]), accepting as true the evidence favorable to the plaintiff and evaluating the defendant's evidence only to determine whether the defendant has defeated the plaintiff's evidence as a matter of law. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823 [33 Cal.Rptr.2d 446], disapproved on other grounds in *Equilon, supra*, 29 Cal.4th at p. 68, fn. 5.) A court may not weigh credibility or compare the weight of the evidence. The court's single task is to determine whether the plaintiff has made a prima facie showing of facts supporting his or her cause of action. (*ComputerXpress, Inc. v. Jackson* [(2001) 93 Cal.App.4th 993,] 1010 [113 Cal.Rptr.2d 625].)" (*Gerbosi, supra*, 193 Cal.App.4th at p. 444.)

We review an order denying an anti-SLAPP motion under the de novo standard of review. (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1218 [102 Cal.Rptr.3d 245].) In other words, we will employ the same two-step procedure as did the trial court in determining whether the anti-SLAPP motion was properly denied. (*Gerbosi, supra*, 193 Cal.App.4th at p. 444.)

Citing *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350 [7 Cal.Rptr.3d 803, 81 P.3d 244] (*Hagberg*), Alice argues her false criminal report to the police was absolutely privileged under Civil Code section 47, subdivision (b). We assume without deciding that Alice is correct. It is Alice's next argument with which we take issue. Still relying on *Hagberg*, and now also on *Wang v. Hartunian* (2003) 111 Cal.App.4th 744 [3 Cal.Rptr.3d 909] (*Wang*), Alice argues her "privileged activity" amounted to "protected activity" within the meaning of the anti-SLAPP statute. The trial court disagreed, and so do we.

■ As noted above, the anti-SLAPP statute is not implicated, and cannot be invoked by a defendant, unless the defendant's conduct underpinning a plaintiff's cause of action involved an act in furtherance of the defendant's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1); see *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) Because Alice's act of making a false police report was not an act in furtherance of her *constitutional* right of petition or free speech, the anti-SLAPP statute simply never comes into play in this case. Neither the federal nor the state *constitutional* right of petition or free speech encompasses a right to file a false criminal report. Indeed, if the right of petition or free speech encompassed a right to file a false criminal report, then laws criminalizing such reports would be inherently unconstitutional. The determination whether a *privilege established by statute* immunizes Alice from civil liability for making a false criminal report is a wholly separate issue from the determination whether her conduct in the first instance was an *act in furtherance of her constitutional rights.*

*Hagberg* does not convince us to reach a different conclusion. *Hagberg* is a case decided in the context of a motion for summary judgment. In that procedural context, the *Hagberg* case explains when and under what circumstances the privilege established by Civil Code section 47, subdivision (b), will defeat a claim arising from an alleged false criminal report. *Hagberg* does not say that a claim arising from a false criminal report necessarily brings the anti-SLAPP statute into application.

■ *Wang, supra*, 111 Cal.App.4th 744 is no more helpful to Alice. Although *Wang* is a case decided in the context of an anti-SLAPP motion, the

parties there *"concur[red]"* that a "privileged activity" within the reach of Civil Code section 47, subdivision (b), is a "protected activity" within the meaning of Code of Civil Procedure section 425.16. (*Wang, supra,* at p. 748, italics added.) Given this foundation, Division Five of our court limited its examination to the issue of whether Civil Code section 47, subdivision (b), defeated claims arising from alleged false criminal reports. In other words, because the parties essentially stipulated that the anti-SLAPP statute applied, Division Five did not address whether the parties were correct that a "privileged activity" under Civil Code section 47, subdivision (b), is a "protected activity" within the meaning of section 425.16. A published decision is not authority for an issue which was not actually addressed and decided. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 620 [71 Cal.Rptr.2d 830, 951 P.2d 399].)

■ Alice's position is also defeated by *Flatley, supra,* 39 Cal.4th 299, which was decided after *Wang.* As the Supreme Court explained in *Flatley,* while there is a relationship between the litigation privilege and the anti-SLAPP statute, the scope of the protections afforded under the two statutes are not identical in every respect and are "not substantively the same." (*Id.* at p. 323.) The court further explained that " 'the litigation privilege is an entirely different type of statute than section 425.16. The former enshrines a substantive rule of law that grants absolute immunity from tort liability for communications made in relation to judicial proceedings [citation]; the latter is a procedural device for screening out meritless claims [citation].' " (*Id.* at pp. 323–324, quoting *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 737 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

"Nor do the two statutes serve the same purposes. The litigation privilege embodied in Civil Code section 47, subdivision (b), serves broad goals of guaranteeing access to the judicial process, promoting the zealous representation by counsel of their clients, and reinforcing the traditional function of the trial as the engine for the determination of truth. Applying the litigation privilege to some forms of unlawful litigation-related activity may advance those broad goals notwithstanding the 'occasional unfair result' in an individual case. . . .

■ "Section 425.16 is not concerned with securing for litigants freedom of access to the judicial process. The purpose of section 425.16 is to protect the valid exercise of constitutional rights of free speech and petition from the abuse of the judicial process (§ 425.16, subd. (a)), by allowing a defendant to bring a motion to strike any action that arises from any activity by the defendant in furtherance of those rights. (§ 425.16, subd. (b)(1).) By necessary implication, the statute does not protect activity that, because it is illegal, is not in furtherance of constitutionally protected speech or petition rights.

(*Wilcox v. Superior Court, supra*, 27 Cal.App.4th at p. 819 . . . .) Thus, the rationale for applying the litigation privilege to some forms of illegal conduct—like perjury—because the occasional bad result is justified by the larger goal of access to the judicial process is simply not transferable to the anti-SLAPP statute because the latter statute does not promote the same goals as the former. Moreover, by its very terms, section 425.16 does not apply to activity that is not in furtherance of the constitutional rights of free speech or petition and this would necessarily include illegal activity that falls outside protected speech and petition rights. . . .

"Conversely, Civil Code section 47 states a statutory privilege, not a constitutional protection. As we recognized in *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157 [232 Cal.Rptr. 567, 728 P.2d 1202], that statutory privilege is specific and limited in nature. In *Oren*, we concluded that while Civil Code section 47 prohibited an action based on a party's statements made during settlement negotiations, it did not preclude the use of those statements as evidence of the party's intent to establish an abuse of process claim. (*Oren, supra*, 42 Cal.3d at pp. 1167–1168.) . . .

"By parity of reasoning, Civil Code section 47 does not operate as a limitation on the scope of the anti-SLAPP statute. The fact that Civil Code section 47 may limit the liability of a party that sends to an opposing party a letter proposing settlement of proposed litigation does not mean that the settlement letter is also a protected communication for purposes of section 425.16. *Therefore, we reject [the] contention that, because some forms of illegal litigation-related activity may be privileged under the litigation privilege, that activity is necessarily protected under the anti-SLAPP statute.*" (*Flatley, supra*, 39 Cal.4th at pp. 324–325, fn. & citations omitted, italics added.)

Because Alice does not contest that she submitted an illegal, false criminal report, "[w]e end our review here. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733 [64 Cal.Rptr.3d 867] . . . [when a defendant does not show that a 'protected activity' underpins the plaintiff's claims, it is irrelevant whether the plaintiff has shown a 'probability of prevailing' on his or her claims].)" (*Gerbosi, supra*, 193 Cal.App.4th at p. 445.) We agree with Alice that the privilege established in Civil Code section 47 has been applied in numerous cases that involved false reports or perjured testimony, but find this legal proposition is irrelevant for purposes of the first step of the anti-SLAPP procedure. Alice may have a valid privilege-based defense which she may present in another procedural context, but such a defense may not be presented by way of an anti-SLAPP motion. The defense could be presented in the context of an anti-SLAPP motion only if the act upon which Jon sued

was a protected activity within the meaning of the anti-SLAPP statute. For the reasons we have stated, we agree with the trial court that Alice did not make such a showing. Filing a false criminal complaint is an illegal activity, not a constitutionally protected exercise of the right of petition or free speech, and that is the end of Alice's anti-SLAPP motion.

## DISPOSITION

The trial court's order denying the anti-SLAPP motion is affirmed. The respondent is awarded costs on appeal.

Rubin, J., and Flier, J., concurred.